## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02720-MSK-KMT

MAVERICK COIL TUBING SERVICES, LLC,

Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY,

Defendant.

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO BIFURCATE

---

Plaintiff Maverick Coil Tubing Services, LLC ("Maverick"), by and through its attorneys, Beatty & Wozniak, P.C., hereby files its Response (the "Response") in Opposition to the Motion to Bifurcate (the "Motion") filed by Defendant St. Paul Fire and Marine Insurance Company ("St. Paul"), and, as support therefor, states as follows:

## I.
## INTRODUCTION

St. Paul moves to bifurcate the proceedings based upon little more than St. Paul's contention that coverage claims and bad faith claims should be tried separately. Since there is no general policy to bifurcate such proceedings in this Court or any other court identified by St. Paul, St. Paul bears the burden of providing specific facts and legal analysis sufficient to overcome the well-established principle, as recently articulated by this Court, that a plaintiff is presumed to be entitled to a single trial of all of its claims.

St. Paul fails to demonstrate that the presumption of a single trial should be set aside in this case because bifurcation would result in convenience and judicial economy or efficiency. Rather, St. Paul's entire basis for maintaining that bifurcation would promote judicial economy and efficiency is founded on its premature assertion that St. Paul necessarily will prevail on the coverage claims. Though Maverick believes St. Paul's optimism on the coverage claims is legally and factually misplaced, in any event, through its Motion, St. Paul in essence seeks a determination on the merits of its coverage defenses at the outset of the proceedings; before there has been any real discovery or any motions practice whatsoever.

Neither can St. Paul demonstrate it will sustain actual, as opposed to presumed, prejudice if this matter proceeds without bifurcation. Instead, St. Paul presents only broad generalizations of prejudice, none of which withstand scrutiny.

Furthermore, even if the Court, whether now or later in the proceedings, granted bifurcation as to the trial of Maverick's claims, discovery should not be bifurcated. Bifurcation of the discovery process would result in duplicative discovery and unnecessarily extend the time for Maverick's presentation of its claims by requiring one trial on coverage issues, followed by discovery and then a second trial on Maverick's bad faith claims. Judicial economy and efficiency would not be promoted by such a layered process. Moreover, Maverick, as the aggrieved insured seeking coverage, would be the party most prejudiced by the process advocated by St. Paul, which is contrary to a system designed to promote the swift and efficient adjudication of Maverick's claims.

Finally, St. Paul fails in its efforts to assert that, as a matter of Colorado law, a plaintiff's bad faith claims must fail if its coverage claims fail. For each of these reasons, as detailed

herein, the presumption of a single trial should be honored and St. Paul's Motion should be denied.

## II.
## BACKGROUND

In November 2007, while performing coil tubing sand removal services on the D-19 natural gas well located in Garfield County, CO (the "Well") owned by EnCana Oil and Gas (USA) Inc. ("EnCana"), Maverick's coil tubing became stuck in the Well. Maverick's Second Amended Complaint (the "Complaint") ¶¶ 18-19. During Maverick's efforts to remove the stuck coil tubing from the Well, the coil tubing separated, leaving a portion lodged in the Well. *Id.* ¶ 20. Maverick compensated EnCana for some of EnCana's costs to remove the remaining coil tubing and to restore production to the Well.

Maverick subsequently presented a claim (the "Claim") to St. Paul for indemnification under the terms of the liability insurance policy issued to Maverick by St. Paul -- the EnergyPro Oil and Gas Commercial General Liability Protection Policy No. VK08301263 dated effective June 1, 2007 (the "Policy").

St. Paul denied Maverick's Claim, citing several purported justifications, both factual and based upon the language of the Policy. In response, Maverick filed its Complaint, asserting claims for: (i) Breach of Contract; (ii) Breach of the Covenant of Good Faith and Fair Dealing; (iii) Bad Faith Denial of Insurance Contract; and (iv) Declaratory Judgment.

St. Paul's Motion requests this Court to bifurcate Maverick's claims for coverage under the Policy (collectively, the "Coverage Claims") from Maverick's claim for bad faith denial of Maverick's Claim (the "Bad Faith Claim").

## III.
## ARGUMENT

**A.  MAVERICK'S CLAIMS SHOULD NOT BE BIFURCATED.**

There is no dispute that a decision to bifurcate is within the court's discretion. *See, e.g.,*

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1435 (10th Cir. 1993).  More importantly for

purposes of this case, however, "[t]here is no absolute rule that a coverage claim should always

be bifurcated from a bad faith claim." *General Elec. Credit Union v. Nat'l Fire Ins. of Hartford*,

No. 1:09-cs-143, 2009 WL 3210348, at *2 (S.D. Ohio Sept. 30, 2009) (internal citations

omitted).[1]   Rather, "[a] decision on bifurcation should be grounded in the facts and

circumstances of each case." *Id.*

St. Paul argues for bifurcation not because of any facts or circumstances unique to this

case.  Instead, St. Paul seeks bifurcation based upon generalized assertions of prejudice or

judicial economy.  None of St. Paul's arguments are sufficient to overcome the presumption

against bifurcation.  Accordingly, the Motion should be denied.

**1.    St. Paul has not, and cannot, overcome the presumption favoring a single
trial.**

St. Paul purports to rely on this Court's Opinion and Order in *Securities and Exchange*

*Comm'n v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2008 WL 4170269 (D. Colo. Sept. 5, 2008)

(Krieger, J.), for the proposition that the decision to bifurcate is within the broad discretion of the

court. *See* Motion at 4.

---

[1] Copies of the unpublished cases cited herein are attached hereto collectively as Exhibit "A" for
the Court's convenience.

St. Paul fails to observe, however, that in *Nacchio* this Court placed the burden squarely on the party seeking bifurcation: "However, the burden is on the movants to overcome the assumption that a single trial lessens delay, expense, and inconvenience to the parties and preserves the Plaintiff's presumptive right to present the case in the manner in which it chooses." 2008 WL 4170269, at *1.[2]   Moreover, in *Nacchio,* this Court denied the motion to sever, concluding that "[w]hen weighed against the minimal risk of prejudice resulting from a joint trial, the Court finds that the inconvenience and inefficiency of conducting two trials warrants denial of the motion to sever." *Id.* at *3.[3]

Consistent with the presumption in favor of a single trial, and Maverick's right as plaintiff to present its case as it determines best, at the Rule 16 Conference held in this matter on February 16, 2010, this Court expressed an unwillingness to order bifurcation.   Instead, in response to a specific request from St. Paul's counsel to order bifurcation, the Court stated: "You have to agree to that."   Rule 16 Conference, February 16, 2010, Reporter's Transcript at

---

[2]   Other courts also have noted that bifurcation "is the exception rather than the rule of normal trial procedure; Rule 42(b) allows, but does not require, bifurcation to further convenience or avoid prejudice." *Deguchi v. Allstate Ins. Co.*, No. 07-00144 JMS-LEK, 2007 WL 3022235 (D. Haw. Oct. 11, 2007); *see also Sensitron, Inc. v. Wallace*, 504 F. Supp. 2d 1180, 1186 (D. Utah 2007) ("However, the presumption is that the plaintiff, in a typical case, should be allowed to present her case in the order she chooses.   The burden is on the defendant to convince the court that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties."); Fed. R. Civ. P. 42 advisory committee's note (1996 Amendment) ("[S]eparation of issues for trial is not to be routinely ordered[.]").

[3]   St. Paul also notes the citation in *Nacchio* to *Anaeme v. Diagnotek, Inc.*, 164 F.3d 1275 (10th Cir. 1999).   Interestingly, in *Anaeme,* the court dismissed the plaintiff's claim that he was prejudiced by the district court's failure to bifurcate the liability and damages phases of the trial because the "Plaintiff **did not ask** the district court to bifurcate the proceedings," and thus declined to address his argument. *Id.* at 1285 (emphasis added).   As important, the *Anaeme* court continued to note "that, even if the court could have bifurcated the proceedings on its own motion under Federal Rule of Civil Procedure 42, we see no indication that it abused its discretion in not doing so." *Id.*

7:23.  A true and correct copy of the Reporter's Transcript of the Rule 16 Conference is attached hereto as Exhibit "B" and incorporated herein by this reference.

St. Paul has brought its Motion at the very beginning of this case.  While Maverick and St. Paul have exchanged written discovery requests, there have been no responses.  There have been no depositions.  No motions have been filed.  The present case, procedurally, therefore is directly analogous to *Gaffney v. Federal Ins. Co.*, No. 5:08 CV 76, 2008 WL 3980069, at *3 (N.D. Ohio Aug. 21, 2008), where the court denied a motion to bifurcate, noting that a decision to bifurcate is premature when made early in the proceedings:  "There has yet to be discovery or motion practice in this case.  Many of the facts and circumstances that are relevant to the balancing of interests required of the Court in exercising its discretion to bifurcate are unknown at this time."  *Id.*  As a result, the *Gaffney* court concluded that it was "premature to exercise its discretion on the issue of bifurcation."  *Id.*

Similarly, this Court should hold that St. Paul's Motion is, at best, premature.  In any event, St. Paul cannot support its Motion through an affirmative showing of real convenience and judicial economy or efficiency if bifurcation is granted.  Nor can St. Paul demonstrate actual, as opposed to presumed, prejudice in the absence of bifurcation.

> **a.** **Convenience would not be promoted through bifurcation because Maverick's Coverage Claims and its Bad Faith Claim are interrelated and involve significant factual overlap.**

"In cases where the coverage and bad faith claims are so interrelated that discovery relevant to the bad faith claims is also relevant to other claims, this court has declined bifurcation."  *General Elec. Credit Union*, 2009 WL 3210348, at *3.  Such is the case here.  As but one example, St. Paul denied Maverick's Claim, at least in part, based upon its assertion that

Maverick's intentional conduct caused the separation of the coil tubing that resulted in the damages claimed by Maverick.

In a letter from Suzanne J. Roberts, St. Paul's Regional Managing Director – Oil & Gas, dated March 2, 2009, St. Paul denied Maverick's Claim based, at least in part, on its assertion that "Maverick's supervisor intentionally and knowingly exceeded the maximum tensile strength of the coil tubing with the knowledge that to do so would result in the string separating and the well being blocked," and, therefore "coverage under the policy is excluded." A true and correct copy of Ms. Roberts' March 2, 2009 letter is attached hereto as Exhibit "C" and is incorporated herein by this reference. Ms. Roberts continued to state categorically: "Applying pressure to the coil tubing in excess of the maximum known tensile strength resulted in the string separating." *Id.* Evidence in St. Paul's claims file regarding the tensile strength of the coil tubing or the conduct or intent of any person or entity in connection with the pulling on the tubing that resulted in the separation is directly relevant to the Coverage Claims brought by Maverick. In addition, that very same evidence, information and documents also are relevant to the propriety of St. Paul's handling of Maverick's Claim and thereby, to Maverick's Bad Faith Claim.

In this regard, the present case is strikingly similar to *Deguchi v. Allstate Ins. Co.*, No. 07-00144 JMS-LEK, 2007 WL 3022235, at *3 (D. Haw. Oct. 11, 2007), where the court noted that "[a]t first blush, the issue whether a loss is covered under an insurance policy may seem separate and distinct from the issue whether the insurer acted in bad faith in investigating and denying the insured's loss claim." However, in *Deguchi*, as here, there was "substantial overlap in the issues underlying Plaintiffs' coverage claims and their bad faith claims." *Id.*

At issue in *Deguchi* was Allstate's denial of "the claim because Plaintiffs did not fully cooperate during Allstate's investigation." *Id.* The *Deguchi* plaintiffs refused to turn over documents or submit to oral examination regarding their financial condition, arguing that "Allstate's information requests would only be relevant if Allstate believed that plaintiffs intentionally caused the Vessel to sink." *Id.*

The issue of whether the plaintiffs had acted intentionally created an overlap between coverage and bad faith issues because "[w]hether Allstate had a reasonable basis to believe that Plaintiffs caused the Vessel to sink does not only pertain to the bad faith claims; it is also relevant to the issue whether Allstate properly concluded that Plaintiffs breached their insurance contract.... The fact that the coverage claims and the bad faith claims share a central issue weighs against bifurcation." *Id.*

Here, St. Paul has articulated its position that Maverick's intentional conduct precludes coverage. The factual bases for St. Paul's assertions are relevant to the issue of coverage under the Policy. At the same time, if facts or documents demonstrate that St. Paul reached its position without adequate information or investigation, those facts and documents also would be relevant to Maverick's Bad Faith Claim.[4] Here, as in *Deguchi*, the overlap of central issues and facts mitigates heavily against bifurcation.

---

[4] St. Paul also has alleged that Maverick failed to provide St. Paul with timely notice of the Claim and failed to cooperate with St. Paul's investigation thereof. *See* Letter from John R. Chase, counsel for St. Paul, dated June 15, 2009, at 2. A true and correct copy of Mr. Chase's letter is attached hereto as Exhibit "D" and is incorporated herein by this reference. As discussed in *Deguchi*, issues relating to an alleged breach of the Policy by Maverick for failure to cooperate, or for untimely or improper conduct in presenting a claim, also necessarily would create an overlap and intermingling of Coverage Claims and the Bad Faith Claim, and weigh against bifurcation.

b.      **Bifurcation would not promote judicial economy or efficiency.**

St. Paul's assertion that bifurcation would promote judicial economy and efficiency is based solely upon its ill-founded premise that St. Paul will prevail on the issue of coverage under the Policy.  If, on the other hand, Maverick demonstrates that it was entitled to coverage under the Policy, bifurcation would be anathematic to judicial economy and efficiency. "[D]elaying discovery and further extending … litigation, on the **mere possibility** that the resolution of the coverage issues may preclude Plaintiff's bad faith claim, does not operate to conserve the resources of the parties or this Court." *General Elec. Credit Union*, 2009 WL 3210348, at *5 (emphasis added).

In *Deguchi*, the court concluded that bifurcation would not promote judicial economy or efficiency because the "two phases of the bifurcated trial would feature the same key witnesses," whose "testimony at each phase would also address many of the same documents, transactions, events, and occurrences." 2007 WL 3022235, at *3; *see also Tripp v. Western Nat'l Mut. Ins. Co.*, No. CIV 09-4023-KES, 2010 WL 547181, at *3 (D. S.D. Feb. 9, 2010) ("Furthermore, the court finds that the presentation of any additional evidence relating solely to the bad faith claim would not add substantial time to the presentation of evidence at trial, and, thus, the interest of judicial economy would not be furthered by bifurcating the trial.").  The same admonition applies here – bifurcation would result the duplicative presentation of testimony and evidence. Neither judicial economy not efficiency would be promoted through bifurcation.

c.      **St. Paul will not be prejudiced in the absence of bifurcation.**

St. Paul asserts, without explanation or specific examples, that bifurcation will "reduce the possibility of undue prejudice" that would occur if the jury were to hear both the Coverage

Claims and Bad Faith Claim at the same time.  Motion at 10.  St. Paul's cautionary tale of prejudice to the jury is both non-specific and unwarranted.

Faced with a similar argument of purported prejudice, the court in *Tripp* avowed its faith in juries and denied bifurcation:

> Western National also argues that bifurcation would avoid jury confusion.  Juries in South Dakota have successfully handled cases that have involved a concurrent presentation of a breach of contract claim and a bad faith claim.  And Western National has not demonstrated that this case involves unique issues that distinguish it from other cases involving a breach of contract claim and a bad faith claim.  Furthermore, there is a presumption that juries can and do follow instructions conscientiously and evaluate the evidence before them carefully.  Thus, Western National's concern about jury confusion is without merit.

2010 W6 547181, at *3 (internal quotation omitted); *see also Steinert v. Mountain States Mut. Cas. Co.*, No. 07-cv-01454-REB-MJW, 2008 WL 2782733, at *3 (D. Colo. July 8, 2008) (Blackburn, J.) (noting that any alleged prejudice "likely can be alleviated sufficiently by measures other than bifurcation").

Similarly, in denying a motion to bifurcate, the *General Elec. Credit Union* court found the evidence of prejudice to be lacking because the "Defendant [had] not yet shown, **beyond mere assertions**, how the information requested by Plaintiff would impact Defendant's ability to defend the coverage claim." 2009 WL 3210348, at *5 (emphasis added); *see also Deguchi*, 2007 WL 3022235, at *3 ("Allstate has not presented any arguments or evidence supporting their allegation that Plaintiffs' access to the claims file and other related materials would prejudice Allstate's defense of the coverage claims.").

St. Paul clearly seeks to avoid disclosure of its claims file. *See* Motion at 8.  Even if the claims file was not relevant and discoverable on the issue of coverage for Maverick's Claim for the reasons set forth above, St. Paul's efforts to shield its claims file through bifurcation should

not be condoned or supported.

Other courts have held that access to a claims file alone is insufficient to warrant bifurcation, in the absence of a particularized showing of prejudice, which is absent from St. Paul's Motion.  For example, the Eighth Circuit has held that a district court did not abuse its discretion in denying a motion to bifurcate the breach of contract claims and the bad faith claims because the insurer did not show that the insured's access to the claims files prejudiced the insurer's case.  *Athey v. Famers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000).[5]

St. Paul, like the insurers in *Tripp* and *General Elec. Credit Union*, has failed to present any facts or reasoned argument why the presentation of all of Maverick's claims in a single trial would be so prejudicial that the presumption of one proceeding should be disregarded.  Rather, St. Paul's assertions of harm and prejudice would apply in any insurance case involving issues of both coverage and bad faith.   The presence of both claims is, without more, necessarily insufficient to overcome the presumption of a single trial and support bifurcation.

In *Fraser v. Concord General Mut. Ins. Co.*, No. 2:06-cv-201, 2009 WL 890123, *2 (D. Vt. March 30, 2009), the court denied a motion to bifurcate, finding that the insured's contention that "just the fact that the jury hears there is a bad faith claim … is prejudicial to its defense of the coverage claim," would "suggest the Court should adopt a per se rule against trying bad faith and coverage claims together, an outcome not warranted by the law of this jurisdiction."  Nor is

---

[5]   St. Paul's reliance on *Aetna Casualty & Sur. Co. v. Nationwide Mut. Ins. Co.*, 734 F. Supp. 204, 208 (W.D. Pa. 1989), is misplaced because the opinion provides no analysis, facts or reasoning for its conclusion that the issuer would be prejudiced if coverage and bad faith issues were tried together.

such a per se rule in favor of bifurcation supported by the laws applicable to or the precedents established in this Court.[6]  St. Paul's Motion to Bifurcate should be denied.

### 2.    St. Paul's Motion is an effort to avoid providing any discovery to Maverick.

In its Motion, St. Paul asserts that the "Parties previously reached an agreement concerning bifurcation" and that Maverick "asserts that the prior agreement was tied to an agreement on the scope of discovery," which "St. Paul disputes."  Motion at 1.   In fact, Maverick's discussions with St. Paul regarding bifurcation always have centered on the discovery St. Paul would provide in the event of bifurcation.  Specifically, Maverick has been consistent in its position that it could not and would not agree to bifurcation without a clear understanding of the scope of the discovery St. Paul would deem "relevant" in the event of bifurcation.  Maverick simply was not willing to agree to bifurcation only to find itself embroiled in time consuming and costly discovery battles, which would defeat the very premises upon which bifurcation is premised.  Maverick's fears have proven to be all too real and illuminate the thinly veiled motive behind St. Paul's Motion.

At the Rule 16 Conference, St. Paul's counsel agreed that "we need some basic facts" and that "[w]e need to obtain some basic document production just to get to the facts."  Reporter's Transcript, Ex. "B", at 5:9-10; 5:14-15.  In truth, what St. Paul meant was that St. Paul "needed" discovery from Maverick, but Maverick should not be entitled to any discovery from St. Paul.

---

[6]  In fact, "[a] civil case by its very nature almost always involves the dual issues of liability and damages.  Following [the insured]'s argument to its logical conclusion, every civil trial should therefore be conducted in two phases.  Clearly, this is an untenable proposition."  *Wak, Inc. v. Century Sur. Co.*, No. 3:08-cv-517-RV-MD, 2009 WL 1109295, at *2 (N.D. Fla. April 24, 2009) (internal quotation omitted).

In St. Paul's F.R.C.P. 26(a)(1) Disclosures, the **one, single document** St. Paul identified with particularity that, pursuant to the Rule, it "may use to support its claims or defenses" was the Policy.   A true and correct copy of St. Paul's F.R.C.P. 26(a)(1) Disclosures are attached hereto as Exhibit "E" and incorporated herein by this reference.   As discussed above, St. Paul denied Maverick's Claim, in part, because of its assertion that Maverick's employee intentionally and knowingly exceeded the maximum tensile strength of the coil tubing.   It defies logic and credulity to suggest, as St. Paul does, that documents in St. Paul's possession regarding the tensile strength of the coiled tubing and/or the conduct of Maverick's employees are not significant to the claims and defenses in this case.

St. Paul makes its view of the scope of discovery to which Maverick is entitled clear in its Motion as well.   St. Paul succinctly states that if this Court orders bifurcation "[d]iscovery would be simple and straightforward, in that it would **only concern the Policy and Maverick's claim.**" Motion at 6 (emphasis added).   St. Paul has served discovery on Maverick in which it has sought responses to 28 Requests for Admission, 10 Interrogatories and 12 Requests for the Production of Documents.   Maverick does not here argue as to the propriety of those Requests, nor does it argue as to the relevance of the discovery it has served on St. Paul; those are issues for other arguments and other pleadings, if they are needed at all.   Instead, Maverick simply notes the inherent and duplicitous inequality in the objectives behind St. Paul's Motion.   Discovery is a mutual obligation of the parties, which obligation does not change simply because an insurance company is intent on waving an insurance policy and proclaiming that it is the totality of the discovery to which an insured is entitled.   Rule 42(b) permits bifurcation where appropriate to

further convenience, avoid prejudice and to advance expedition and judicial economy. Circumventing the discovery process is not a permitted basis for bifurcation.

**B.     EVEN IF THE COURT BIFURCATES MAVERICK'S CLAIMS, DISCOVERY SHOULD NOT BE BIFURCATED.**

St. Paul purports to rely upon *Cook v. United Services Auto. Ass'n*, 169 F.R.D. 359, 361 (D. Nev. 1996), for the proposition that bifurcation is "highly favored" and that "courts have been reluctant to allow the bad faith claim to proceed until the issue of entitlement to benefits has been determined." Motion at 6; 8-9. A review of the holding in *Cook*, however, demonstrates that it does not support the relief sought by St. Paul in its Motion. Instead, *Cook* (only one example of a line of opinions, including other cases cited by St. Paul) holds that bifurcation of discovery is not warranted, even if bifurcation of the trial is ordered.

While the *Cook* court ordered bifurcation of the breach of contract claim from the "extra-contract claims," the more significant aspect of that order is the court's advisement that "[b]ifurcation of the trial **does not** necessarily require bifurcation of discovery." 169 F.R.D. at 362 (emphasis added). Instead, the *Cook* court, using its discretion over the timing of discovery, concluded that "joint discovery on the contract issues and the bad faith claims is more convenient to the parties and would further judicial economy." *Id.* The court further explained the efficiencies of joint discovery:

> With joint discovery, the plaintiffs will be better informed and therefore better prepared in the event of settlement negotiations or alternative dispute resolution. Moreover, the court, by not staying discovery on the bad faith claims, can avoid hearing discovery disputes over which documents pertain to the contract claim and which relate to the bad faith claims. Also, joint discovery may expedite resolution of the entire matter by permitting the second trial, if necessary, to commence immediately after the first.

*Id.*

Another case cited by St. Paul, *Drennan v. Maryland Cas. Co.*, 366 F. Supp. 2d 1002 (D. Nev. 2005), also held that bifurcation of discovery was not warranted, even after granting bifurcation of the trial:

> The Court further finds that bifurcation of discovery is not warranted in this case. Joint discovery is more convenient to the parties and would further judicial economy. With joint discovery, the parties will be better informed with regard to settlement efforts. Moreover, any discovery disputes will likely pertain to both causes of action. Finally, joint discovery will expedite resolution of the entire matter by permitting the second trial, if necessary, to commence immediately after the first.

*Id.* at 1007; *see also Trujillo v. American Family Mut. Ins. Co.*, No. 1:08-CV-36 TS, 2009 WL 440638, at *5 (D. Utah Feb. 20, 2009) (holding that because plaintiff's breach of contract and bad faith claims were severable and a finding of liability in the breach of contract claim was not a prerequisite for the bad faith claim, plaintiff was entitled to seek discovery on both claims because "separation of discovery would not provide judicial efficiency because the claims will be tried before the same jury in the same time frame").

Similarly, in *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 696 (S.D. Fla. 2007), the court bifurcated the trial and noted that, as result, "[t]he record is undisputed that only the breach of contract claim is at issue at this point, even though the pending complaint also included a bad faith claim." Thus, discovery "geared *solely* towards Plaintiff's bad faith claims [was] premature and irrelevant at this stage, and thus not subject to discovery." *Id.* Significantly, however, the court continued to expressly note that "[i]t goes without saying, of course, that the fact that some of these documents may contain relevant information with respect to the premature bad faith claim **does not** foreclose their discoverability if they are also relevant to the breach of contract claim." *Id.* at n. 5 (emphasis added).

Finally, in *Gaffney*, the court, after bifurcating the plaintiffs' claims for trial, denied a motion to bifurcate discovery because it "conclude[d] that the resulting prejudice to plaintiffs and negative impact on judicial economy out weighs the **speculative prejudice** to [the insurer] that may result from simultaneous discovery of the coverage and bad faith claims." 2008 WL 3980069, at *3 (emphasis added).

Accordingly, even if this Court exercises its discretion and orders the bifurcation of the Coverage Claims from the Bad Faith Claim for trial, bifurcation of discovery is not warranted and should not be ordered.

## C.   DENIAL OF MAVERICK'S COVERAGE CLAIMS MAY NOT MOOT ITS BAD FAITH CLAIM.

St. Paul erroneously asserts that as a matter of law, "[a] determination that the Policy does not provide coverage for Maverick's claim would effectively render Maverick's [Bad Faith Claim] moot. . . ." Motion at 5. In fact, it is at best inconclusive whether the Bad Faith Claim would be mooted, and the cases relied upon by St. Paul are inapposite.

The source of an insurer's duty to act in good faith in the investigation and handling of claims has not been conclusively settled in Colorado. St. Paul's Motion omits any discussion of Colorado jurisprudence courts found a duty requiring insurer's to act in good faith independent of any insurance policy contractual duty.[7] For example, in *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1363 (Colo. 1993), the court held that although the insurer had not breached the insurance policy, its duty of good faith nonetheless remained, because such duty "is a broad and wide-

---

[7]   St. Paul does acknowledge, however, that Maverick's claims are based on distinct legal theories: Maverick's Coverage Claims are contract claims while its Bad Faith Claim sounds in tort. *See* Motion at 10.

ranging one, extending to 'everything pertaining' to the provision of insurance services to the public."

In *Flickinger v. Ninth Dist. Prod. Credit Ass'n. of Wichita, Kansas*, 824 P.2d 19, 24 (Colo. App. 1991), the court emphatically restated Colorado law that claims for bad faith are independent tort claims, and that, an insurer's "tort liability, therefore, does not depend upon its liability under the insurance contract." *See also Schultz v. AllState Ins. Co.*, 764 F. Supp. 1404, 1409-1410 (D. Colo. 1991) (Nottingham, J.) (plaintiff's bad faith claim sounded in tort and was distinct from and survived the dismissal of the plaintiff's breach of contract claim).

Conversely, St. Paul's Motion cites a variety of factually- and legally-distinct cases in an effort to support its argument that a lack of insurance coverage conclusively moots any claim for bad faith investigation and denial of a claim.  Motion at 5-7.  For example, St. Paul cites to *Farmers Alliance Mutual Ins. Co. v. Cutrone*, 448 F. Supp. 2d 1226, 1234 (D. Colo. 2006), for support, but *Cutrone* is both factually and legally inapposite because it involved a first party uninsured motorist claim by a law enforcement officer, brought against the insurer of his personal vehicle, for failure to cover his injuries incurred during a traffic stop shooting.  St. Paul's other attempts to provide support for its "conclusive" view of the law are in accord. *Jarnigan v. Banker's Life & Casualty Co.*, 824 P.2d 11 (Colo. App. 1991) (first party claim where decision was based on injury occurring outside of coverage period); *O'Malley v. U.S. Fidelity & Guaranty Co.*, 776 F.2d 494 (5th Cir. 1985) (decision based on Michigan law regarding building insurance policy, not commercial general liability policy); *South Hampton Refining Co. v. National Union Fire Ins. Co.*, 875 F. Supp 382 (E.D. Tex. 1995) (decision in first party case based on Texas law and insurer's failure to settle within coverage limits).

St. Paul has failed to demonstrate that Colorado law universally precludes Maverick's Bad Faith Claim in the event its Coverage Claims are unsuccessful.   Instead, Colorado law regarding this issue is unsettled, and, at best, is heavily dependent on the case specific facts and conditions, which have not been fully developed here.   Furthermore, even if denial of Maverick's Coverage Claims necessarily would dispose of its Bad Faith Claim, which it does not, the Court should follow the lead of the court in *Light v. Allstate Ins. Co.*, 182 F.R.D. 210, 210 (S.D. W.V. 1998), which was "unpersuaded by that argument alone to prove that bifurcation … promotes judicial convenience and economy."   St. Paul's suggestion that the absence of coverage under the Policy necessarily moots Maverick's Bad Faith Claim therefore is misplaced and cannot support its Motion.

## IV.
## CONCLUSION

For each of the foregoing reasons, Maverick respectfully requests that this Court deny St. Paul's Motion to Bifurcate.

Dated this 5th day of April, 2010.

Respectfully submitted,

*Original signature on file in the offices of Beatty & Wozniak, P.C.*

s/ *Jack R. Luellen*
Jack R. Luellen, #29017
Brent D. Chicken, #36217
BEATTY & WOZNIAK, P.C.
216 Sixteenth Street, Suite 1100
Denver, Colorado  80202-5115
Phone Number:  (303) 407-4499
Fax Number:  (303) 407-4494
E-mail:  jluellen@bwenergylaw.com
E-mail:  bchicken@bwenergylaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2010, I electronically served the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO BIFURCATE** to the following email addresses:

David B. Gelman                       dgelman@kcfpc.com
Benjamin M. Petre               bpetre@kcfpc.com
Kennedy Childs & Fogg, P.C.
633 Seventeenth Street, Suite 2200
Denver, CO 80202

*Attorneys for Defendant*
*St. Paul Fire and Marine Insurance Co.*

<u>s/ Carolyn Boulette</u>

147249-9